IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 16-cv-00797-PAB-KLM

JACOB BARUTH,

    Plaintiff,

v.

STELLAR RECOVERY, INC., a Florida corporation,

    Defendant.

# ORDER

This matter is before the Court on intervenor Ameris Bank's Motion for Summary Judgment of the Priority of its Interest in Interpleader Funds [Docket No. 125] and plaintiff Jacob Baruth's Motion to Disburse Interpleader Funds [Docket No. 127].

## I. BACKGROUND

At issue in this case is $42,103.00 held by Comcast Cable Communications Management ("Comcast") as an account receivable of defendant Stellar Recovery, Inc. ("Stellar"). Stellar, a Florida corporation, voluntarily dissolved at some point after February 2016. Docket No. 126 at 3, ¶ 8. Both plaintiff Jacob Baruth ("Baruth") and intervenor Ameris Bank ("Ameris") contend that they are entitled to the funds.

On April 6, 2016, Baruth filed a complaint alleging that Stellar violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), and the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"). Docket No. 1.[1] On June

---

[1] All facts in this section are undisputed unless otherwise noted.

9, 2017, following an offer of judgment by Stellar pursuant to Fed. R. Civ. P. 68 and an acceptance by Baruth, see Docket Nos. 94 and 94-1, the Court entered judgment in favor of Baruth and against Stellar in the amount of $21,000.00, plus Baruth's costs and Baruth's "reasonable attorney's fees related solely to the Plaintiff's FDCPA claim." Docket No. 95 at 1. On March 19, 2018, the Court awarded Baruth $42,033.00 in attorney's fees. Docket No. 106.

On February 5, 2016, Stellar, which was incorporated in Florida, signed a business loan agreement with The Jacksonville Bank ("TJB"). Docket No. 125 at 2, ¶¶ 3-4.[2] In exchange for a $5,000,000.00 line of credit from TJB, Stellar executed a $5,000,000.00 promissory note. *Id.*, ¶ 5. Stellar also signed a commercial security agreement, granting TJB a security interest in certain personal property of Stellar (the "personal property"), including its accounts receivable. *Id.* at 2-3, ¶ 6. On February 15, 2016, TJB recorded its interest in the personal property with the Florida Secretary of State in the Florida Secured Transaction Registry. *Id.* at 3, ¶ 7. On March 11, 2016, TJB merged with and into Ameris. *Id.*, ¶ 8.

After Stellar defaulted on the business loan agreement, Ameris filed suit against Stellar in Florida state court. *Id.* at 3-4, ¶ 10.[3] On January 3, 2018, the Florida court

---

[2] Baruth responds to many of Ameris's undisputed material facts with the assertion that he "lacks the ability to admit or deny this allegation based on the information available to the [p]laintiff at this time." Docket No. 133 at 2-4, ¶¶ 3-8, 11. As Baruth cites to no evidence in the record disputing these facts, the facts are considered undisputed for purposes of the motion. *See* Fed. R. Civ. P. 56(e); Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3.

[3] Baruth denies ¶ 10 of Ameris's motion on the ground that Ameris "has not established that the funds at issue were located in Duval County, Florida." Docket No.

entered final summary judgment in favor of Ameris and against Stellar. *Id*.[4] As part of its order, the state court adjudged "the security interest of Ameris in and to the [c]ollateral is superior to any right, title, or interest of [Stellar]" and "any parties claiming by or through [Stellar]." *Id*. The "collateral" included Stellar's accounts receivable. *Id*. On March 8, 2018, Ameris purchased the collateral at a judicial sale. *Id*. at 4, ¶ 11. On March 19, 2018, the Clerk of the Court issued a certificate of title confirming Ameris as owner of the collateral. *Id*.[5]

On April 3, 2018, Baruth obtained a Writ of Garnishment from the Court directed at Comcast, intending to collect the $42,103.00 still owed to him by Stellar in this case. Docket No. 111. On May 17, 2018, Comcast filed a motion to deposit $42,103.00 in

---

133 at 3, ¶ 10 (citing Docket No. 119-4 at 2). However, nowhere in ¶ 10 does Ameris state that the funds at issue were located in Duval County. Baruth's denial is based on a legal argument that Stellar's accounts receivable ordered sold by the Florida state court do not include any accounts located outside Duval County, rather than a factual dispute as to what the court ordered. Accordingly, the Court will treat the fact as undisputed.

[4] Baruth argues that the evidence offered by Ameris to establish this fact – the final summary judgment entered by the Florida state court, *see* Docket 126-6 – is inadmissible pursuant to Fed. R. Evid. 902(2). Docket No. 133 at 3, ¶ 10. The Court, however, takes judicial notice of this exhibit, "which [is] a matter of public record." *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

[5] Baruth argues that the evidence offered by Ameris to establish this fact – a certificate of title, *see* Docket No. 126-7 -- is inadmissible pursuant to Fed. R. Evid. 902(2). Docket No. 133 at 3-4, ¶ 11. However, the document bears the signature of the deputy clerk of the Circuit Court, Duval County, Florida, as well as the seal of the Clerk of the Circuit Court. Docket No. 126-7. Fed. R. Evid. 902(1) provides that a document bearing "a seal purporting to be that of" "a department, agency, or officer of" "any state . . . [or] a political subdivision" of a state, and a "signature purporting to be an execution or attestation" is self-authenticating. As the document bears the seal of "a department, agency, or officer of" Duval County, a political subdivision of Florida, and a signature, the document is self-authenticating and therefore admissible.

interpleader funds (the "funds") with the Court. Docket No. 116. In the motion, Comcast indicated the funds "may or may not be subject to the Writ of Garnishment because non-party Ameris Bank may be the rightful owner of the funds." *Id*. at 2. Baruth did not file a response. The Court subsequently granted Comcast's motion. Docket No. 118. On May 30, 2018, Ameris moved to intervene. Docket No. 119. Baruth did not file a response. On October 19, 2018, the Court granted Ameris's motion to intervene. Docket No. 122. On December 7, 2018, Ameris filed a motion for summary judgment, asking the Court to hold that its interest in the interpleader funds is superior to Baruth's interest and to release the funds to Ameris. Docket No. 125. On December 10, 2018, Baruth filed a "motion to disburse interpleader funds," asking the Court to release the funds to Baruth. Docket No. 127.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir.

1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

III. **ANALYSIS**

A. **Interpleader Generally**

"Interpleader is a form of joinder open to one who does not know to which of several claimants it is liable." *Amoco Prod. Co. v. Aspen Group*, 59 F. Supp. 2d 1112, 1114 (D. Colo. 1999) (citation omitted). "An interpleader action typically proceeds in two stages. During the first stage, the court determines whether the stakeholder has

5

properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader. . . . During the second stage, the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial." *United States v. High Tech. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007) (citation omitted).

The Court completed the first stage of the interpleader action through Magistrate Judge Kristen L. Mix's order granting Comcast's motion to deposit the funds, which indicated that Comcast will have "no further obligations with respect to the Writ of Garnishment" or the funds at issue and directed that a copy of the order be sent to Ameris. Docket No. 118; *see also* 7 Charles Alan Wright et al., *Federal Practice & Procedure* § 1714 (3d ed. updated April 2019) (noting that "[w]hen the court decides that interpleader is available, it may issue an order discharging the stakeholder, if the stakeholder is disinterested"). Thus, Baruth and Ameris are now at the second stage of the interpleader action. "[W]hen there is no genuine issue of material fact . . . the second stage [of an interpleader action] may be adjudicated on a summary-judgment motion." 7 *Fed. Prac. & Proc.* § 1714. Ameris filed a motion for summary judgment; Baruth filed a motion to disburse interpleader funds, which the Court will construe as a motion for summary judgments. Docket Nos. 125, 127.

### B.  Ameris's Motion for Summary Judgment

The Court turns first to Ameris's motion for summary judgment. Docket No. 125.

Ameris argues that it has a security interest in the funds superior to Baruth's because it perfected its security interest prior to entry of judgment for Baruth in this case. *Id*. at 7.

The parties agree that this case is governed by Article 9 of the Uniform Commercial Code ("UCC"). Docket No. 125 at 5-6, Docket No. 127 at 4; *see* Colo. Rev. Stat. §§ 4-9-101 *et seq.*; Fla. Stat. §§ 679.1011 *et seq.*[6] Article 9 applies to "[a] transaction, regardless of its form, that creates a security interest in personal property." UCC § 9-109(a)(1); Colo. Rev. Stat. § 4-9-109(a)(1); Fla. Stat. § 679.1091(1)(a). "[W]hile a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral." Colo. Rev. Stat. § 4-9-301(1); Fla. Stat. § 679.3011(1). Here, the debtor – Stellar – was located in Florida; thus, Florida law governs the questions of priority and perfection in this case.

Ameris argues that it perfected its security interest in the funds "by and through the filing of its UCC-1 financing form on February 15, 2016," which predates the entry of judgment in favor of Baruth on June 9, 2017. Docket No. 125 at 7. Under Florida law, a party perfects its security interest in personal property by filing a UCC-1 financing statement with the Florida Secretary of State. Fla. Stat. § 679.3101(1) ("a financing statement must be filed to perfect all security interests"); *see Mirage Resorts, Inc. v.*

---

[6] Because both Colorado and Florida have adopted the UCC, both parties assume that the UCC governs the claim without delving into whether Colorado or Florida law applies. *See, e.g.*, Docket No. 125 at 5-7 (noting that Colorado and Florida have both adopted Article 9 of the UCC); Docket No. 133 at 5. Whether the Court begins with Colorado or Florida law makes no difference because the initial inquiry under both Colorado and Florida law is the location of the debtor – Stellar. *See* Colo. Rev. Stat. § 4-9-301(1); Fla. Stat. § 679.3011(1).

*Quiet Nacelle Corp.*, 206 F.3d 1398, 1399 (11th Cir. 2000) (noting that a party perfected its security interest in, among other things, accounts receivable when it filed a UCC-1 financing statement with the Florida Secretary of State). The Florida state court acknowledged that Ameris had perfected its interest when it adjudged that "the security interest of Ameris in and to the [c]ollateral is superior to any right, title, or interest of [Stellar]" and "any parties claiming by or through [Stellar]." *See* Docket No. 125 at 3-4, ¶ 10. Accordingly, the Court agrees with Ameris that it perfected its security interest in the funds on February 15, 2016. *See* Docket No. 126-4. Baruth makes no argument that his interest in the funds attached prior to February 15, 2016. Ameris's interest thus takes precedence over Baruth, who is (at most) a subsequent lien creditor. *See Slodov v. United States*, 436 U.S. 238, 257 n.22 (1978) ("Under the UCC, a perfected security interest is superior to a judgment lien creditor's claim in the property.").[7]

Baruth's scattershot arguments in response are not persuasive. First, Baruth argues that Ameris failed to perfect its security interest in the funds by not obtaining "control" of the collateral. *See* Docket No. 133 at 5. However, Baruth constructs this argument upon portions of the UCC statutes governing the security interest in a "deposit account." *See id.* at 5-6 (citing UCC §§ 9-104(a), 9-312(b)(1) and (b)(3), and 9-314(a) and (b)). As Ameris points out, the funds at issue here are accounts receivable and not a deposit account. *See* Docket No. 132 at 5. The funds cannot be

---

[7] Ameris argues that Baruth has no interest in the funds because the judgment in this case, without more, does not establish Baruth's interest in the funds. Docket No. 125 at 9-12. Because Baruth's interest would not have priority over Ameris's interest even if the judgment established his interest in the funds, the Court need not reach this argument to resolve this case.

a deposit account because a deposit account is "maintained with a bank," see UCC § 9-102(a)(29), and the UCC definition of "account" explicitly excludes deposit accounts. See UCC § 9-102(a)(2) ("The term [account] does not include . . . deposit accounts."). Comcast is not a bank, and Baruth cites no authority or evidence demonstrating that the funds should be treated as a deposit account rather than accounts receivable. As a result, there is no need for Ameris to show control of the collateral in order to perfect its security interest. See In re Ashoka Enters., Inc., 125 B.R. 845, 846 (Bankr. S. D. Fla. 1990) (noting that accounts receivable are "subject to perfection only by filing a financing statement").

Next, Baruth argues that Ameris has not established that the funds "were accounts receivable of [Stellar] and/or were covered by" Ameris's lien. See Docket No. 133 at 1. This argument is unsupported by the record. Comcast's motion to deposit interpleader funds represented that the funds are "part of an amount that Comcast has held as an account receivable of [Stellar]." See Docket No. 116 at 2. Ameris's subsequent motion represented that Stellar's accounts receivable "are the funds at issue" in this case. See Docket No. 119 at 2, ¶ 4. The Court granted both motions. Notably, Baruth did not file a response or objection to either motion. Baruth has offered no evidence or legal argument that would indicate that the funds are anything other than what Comcast represented they are. Thus, there is no genuine dispute of material fact on this issue that would preclude summary judgment for Ameris.

Baruth argues that Ameris has not shown that it was entitled to foreclose the lien on its security interest or that Ameris had disbursed any funds to Stellar per the terms

9

of the loan agreement. Docket No. 133 at 7-8. However, the evidence before the Court includes the final summary judgment order entered by the Florida state court. *See* Docket No. 126-6. The order indicates that Stellar owed Ameris $3,798,917.28 and directs foreclosure and judicial sale of Ameris's security interests in the collateral (i.e., the accounts receivable). *See id*. at 8-10. Although Baruth argues that this order is inadmissible, the Court has taken judicial notice of this order. *See* n.5 and n.6 above. Baruth's argument is therefore contradicted by the record.

Finally, Baruth argues that the funds held by Comcast are not covered by the certificate of title issued to Ameris because the certificate only applies to certain "property in Duval County, Florida." Docket No. 133 at 7. This argument is contradicted by the plain text of the certificate of title, which applies to "wherever located . . . [a]ll Account Receivables of Stellar Recovery Inc." Docket No. 126-7 at 2. Moreover, the case law indicates that when a debtor is incorporated in Florida, "the proper forum – indeed, the only forum" – for a party to file a financing statement to perfect a security interest in accounts receivable is Florida. *See In re Trafford Distrib. Ctr., Inc.*, 414 B.R. 849, 855 (Bankr. S. D. Fla. 2009). Baruth cites no authority that would suggest that Ameris needed to take action in every state where the accounts receivable may be located in order to perfect its security interest. Like the others, this argument fails.

Because Ameris perfected its security interest in the funds on February 15, 2016, it has priority over any claim to the funds by Baruth arising out of the judgment entered on June 9, 2017. Accordingly, the Court will grant summary judgment for

Ameris, disburse the funds to Ameris, and deny Baruth's motion to disburse.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that intervenor Ameris Bank's Motion for Summary Judgment of the Priority of its Interest in Interpleader Funds [Docket No. 125] is **GRANTED**. It is further

**ORDERED** that plaintiff's Motion to Disburse Interpleader Funds [Docket No. 127] is **DENIED**. It is further

**ORDERED** that the Registry of the Court shall disburse the $42,103.00 deposited by Comcast Cable Communications Management, LLC [Docket No. 121] plus interest accrued, less the registry fee assessment, to intervenor Ameris Bank, care of attorney Ashley Calhoun, Akerman LLP, 1900 Sixteenth Street, Suite 1700, Denver, Colorado 80202.

DATED September 23, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge